FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 23 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ORLY INDUSTRY, INC.,

                Plaintiff,

-v-

RITE AID HDQTRS. CORP.,

                Defendant.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-855 (SLT) (JMA)

**TOWNES, United States District Judge:**

Plaintiff Orly Industry, Inc. ("Orly Industry" or "Plaintiff"), brings this diversity action against Defendant Rite Aid Hdqtrs. Corp. ("Rite Aid" or "Defendant"), alleging state law claims for breach of contract, quantum meruit, and unjust enrichment with regard to the sale of plastic trash bags. Defendant has moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the complaint and other submissions, which, if offered or unopposed by Plaintiff, are assumed to be true for purposes of this motion unless otherwise indicated.

Plaintiff is a New York corporation with its Def. Mot.principal place of business in Brooklyn, New York, engaged in the selling and supplying plastic bags. (Compl. ¶¶ 1, 3, 4). Rite Aid is a Delaware company with its principal place of business in Pennsylvania. (Compl. ¶ 2).

On August 1, 2010, Orly Plastic Enterprise, Inc. ("Orly Plastic")[1] – Plaintiff's predecessor – entered into a Master Purchase Agreement ("Master Agreement") with Rite Aid, involving the sale of trash can liner bags. (Torkeih Decl. ¶ 4; Def. Mot. Ex. B). The Master Agreement contains a clause requiring the parties to submit to alternative dispute resolution ("ADR") for "any dispute, claim or controversy arising out of or relating to this Agreement that is below $250,000" before proceeding to court. (O'Brien Decl. Ex. B ¶ 6.5). It also contains a forum selection clause, providing that the covered contracts would be governed by Pennsylvania law and that all disputes not subject to the ADR provision "shall be brought exclusively in the Court of Common pleas for Cumberland County, Pennsylvania." (Def. Mot. Ex. B ¶ 6.6). With regard to expiration and extension, the Master Agreement includes the following language:

> Agreement Term, Extensions. The term of this Agreement begins on August 1, 2010, and ends on <u>July 31, 2011</u>, subject to [certain] termination provisions []. This Agreement may be extended by the <u>mutual written consent</u> of the parties.

(Torkeih Decl. ¶ 6; Def. Mot. Ex. B ¶ 2.8) (emphasis added). The parties did not provide mutual written consent to extend the Master Agreement. (Torkeih Decl. ¶ 6).

On July 27, 2011, Orly Plastic was dissolved. (Torkeih Decl. ¶ 7; Def. Mot. Ex. H). On July 29, 2011, Torkeih, President of Orly Plastic, sent an email notifying Rite Aid that he had formed a new entity, Orly Industry, where he held the same role. (Torkeih Decl. ¶ 8, Ex. A). On August 1, 2011, O'Brien, Senior Buyer for Rite Aid, responded by email that he would "put through the request" and that he needed "something on the new company letterhead to attach to the accounting request." (Torkeih Decl. ¶ 9, Ex. B). Torkeih provided the document the same day via email. (Torkeih Decl. ¶ 10, Ex. C).

---

[1]   Plaintiff references "Orly Plastics Enterprise" throughout its papers, (see, e.g., Decl. of Jacob Torkeih, dated Aug. 21, 2012 ("Torkeih Decl."), ¶¶ 4, 7, 11, 15), but the company's name is listed as "Orly Plastic Enterprise" in the corporate documents, (Def. Mot. Ex. H).

Between July 28 and October 4, 2011, Rite Aid faxed Plaintiff's sales representative 34 separate purchase orders for specific quantities of merchandise. (Compl. ¶ 6). Each purchase order contained terms for price, delivery and payment. (Compl. ¶ 6). Plaintiff furnished and Rite Aid received all of the merchandise covered by the 34 purchase orders. (Compl. ¶ 7). Rite Aid refused, however, to pay Plaintiff for this merchandise, valued at a total of $158,193.28 under the purchase orders. (Compl. ¶ 10). Five of the purchase orders are dated July 27, 2011, prior to the Master Agreement's expiration date.[2]

Rite Aid has submitted, and Plaintiff references, several emails exchanged by the parties after July 31, 2011. By email dated October 26, 2011, Plaintiff wrote that it had been notified of Rite Aid's "claim that the products do not conform with [its] specifications," and that "according to your contract in section 2.6, we have '30 days' to correct this problem." (Def. Mot. Ex. F). On November 1, 2011, Plaintiff proposed via email a two-year agreement between the parties with regard to the liners "at the quantity on the current bid." (Def. Mot. Ex. C). By email dated November 17, 2011, Rite Aid received a proposal from Plaintiff, acknowledging that Plaintiff "did ship cases that were light weight & short count," offered to rebate $2,500 monthly to Rite Aid, and suggested a price list going forward. (Def. Mot. Ex. E at 2). Plaintiff also noted that it could have "raised the price of the bags with the resin market during 2011, as the agreement allowed for." (Def. Mot. Ex. E at 2). By email dated November 28, 2011, Plaintiff noted that Rite Aid had "a couple of orders in house . . . currently on hold until our payments are released. . . . Please advise on the next step, so that we know how to proceed." (Def. Mot. Ex. D).

---

[2] Rite Aid correctly observes that although Plaintiff describes only three such purchase orders, (Torkieh Decl. ¶ 11; Pl. Opp. at 1), Plaintiff has in fact attached to the complaint five purchase orders dated July 27, 2011, (Compl. Ex. A at 1, 2, 3, 6, 13).

By letter dated December 19, 2011, O'Brien wrote to Torkeih that Rite Aid "has determined product shipped by [Orly] has been below specifications, as detailed in our [Master Agreement] . . . for the past 12 months." (Def. Mot. Ex G). O'Brien further indicated that "in accordance with Section 6.5 [of the Master Agreement], Rite Aid requests the commencement of mediation proceeding to address Orly's breach of the Agreement." (Def. Mot. Ex. G).

### B. Procedural History

On February 1, 2012, Plaintiff commenced this action in the Supreme Court of New York, Kings County. (Docket No. 1 ¶ 1). On February 22, 2012, Rite Aid removed the action to this Court based on diversity jurisdiction. (Docket No. 1 ¶¶ 3-7). Rite Aid thereafter sought permission to file a motion to dismiss, (Docket No. 3), and on April 18, 2012, the Court held a pre-motion conference to discuss Rite Aid's request. The Court determined that the threadbare complaint was "simply not sufficient under the law," but allowed Plaintiff to file an amended complaint. (Docket No. 16 at 7).

On May 15, 2012, Plaintiff filed an amended complaint, seeking to recover $158,193.28 for 34 allegedly unpaid purchase orders on theories of breach of contract, quantum meruit, and unjust enrichment. (Compl. ¶¶ 12-24). On September 14, 2012, Rite Aid filed its motion to dismiss, arguing that (1) if Plaintiff is seeking to enforce its rights under the Master Agreement, it must comply with the ADR and venue provisions; and (2) if Plaintiff contends it is not a party to the Master Agreement, it lacks capacity to sue. (Def. Mot. at 2). Plaintiff in opposition presents a third option, contending that not only was it never a party to the Master Agreement, but that its claims are based on 34 transactions that occurred after the Master Agreement had expired. (Pl. Opp. at 1).

## II.  LEGAL STANDARD

Rite Aid has moved to dismiss for improper venue pursuant to Rules 12(b)(3) and 12(b)(6).[3] Neither the Supreme Court nor the Second Circuit has "specifically designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause.'" Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 822 (2d Cir. 2006) (quoting New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997)); see also Production Res. Group, L.L.C. v. Martin Prof'l, A/S, 907 F. Supp. 2d 401, 406-07 (S.D.N.Y. 2012) (collecting cases). For the sake of clarity and because "[c]ourts in this Circuit appear to prefer Rule 12(b)(3) as the procedural device used to enforce a forum selection clause," this Court will analyze Rite Aid's motion pursuant to Rule 12(b)(3). Nippon Express U.S.A. (Ill.), Inc. v. M/V Chang Jiang Bridge, No. 06 Civ. 694, 2007 WL 4457033, at *3 (S.D.N.Y. Dec. 13, 2007).

Rule 12(b)(3) allows a court considering a venue challenge to "consider evidence outside the four corners of the complaint, including affidavits and other documentary evidence." Martinez v. Bloomberg LP, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012) (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)); see also TradeComet.com LLC v. Google, Inc., 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010). Nevertheless, "[i]n analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper," a court must still

---

[3]  Rite Aid has also moved to dismiss under Rule 12(b)(6) for failure to state a claim. In that context, a court must accept all factual allegations in the complaint as true, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), and typically will consider only the pleadings and materials attached or incorporated by reference, Hoy v. Incorporated Village of Bayville, 765 F. Supp. 2d 158, 163 (E.D.N.Y. 2011). As the complaint makes no mention of the Master Agreement under which Rite Aid argues Plaintiff lacks capacity to sue, the Court finds that Plaintiff's "factual allegations [are] enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570.

5

"view all the facts in a light most favorable to plaintiff." Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007).

### III. DISCUSSION

There is a strong presumption in favor of upholding the enforceability of a forum selection clause unless, for example, "enforcement is shown by the resisting party to be unreasonable under the circumstances." Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 (2d Cir. 2013) (internal quotation marks and citations omitted). "Questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature," Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990), so that "federal law applies to the interpretation . . . in diversity cases," Magi XXI, Inc., 714 F.3d at 721. Determining whether to dismiss a claim based on a forum selection clause involves a four-part inquiry: If the clause (1) was reasonably communicated to the party resisting enforcement; (2) was mandatory; and (3) covers the relevant claims and parties, it is presumptively enforceable, and to rebut that presumption (4) the opposing party must make a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips, 494 F.3d at 383-84 (internal quotation marks omitted).

Where a contract has expired, as Plaintiff alleges, "a forum selection clause may still be enforceable," though "only if the suit arises under the contract." Bank of America, N.A. v. 3301 Atlantic, LLC, No. 10-CV-5204, 2012 WL 2529196, at *5 (E.D.N.Y. June 29, 2012) (citing Weingard v. Telepathy, Inc., No. 05 Civ. 2024, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005)). Accordingly, the Court must first determine whether and to what extent the Master Agreement binds the parties with regard to Plaintiff's claims. Generally, "[w]hen an agreement

6

expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." Martin v. Campanaro, 156 F.2d 127, 129 (2d Cir. 1946). In this case, however, the Master Agreement explicitly provides for extension "by mutual written consent." (Def. Mot. Ex. B ¶ 2.8).

### A. Post-Expiration Transactions

Plaintiff argues and Rite Aid concedes that no such written consent was executed by the parties. Accordingly, viewing the facts in a light most favorable to Plaintiff, the Master Agreement expired by its terms on July 31, 2011, and 29 of the 34 transactions at issue in this case are simply not covered by the Master Agreement or its forum selection clause. See, e.g., Ellan Corp., Inc. v. Dongkwang Intern. Co., Ltd., No. 09 Civ. 414, 2011 WL 4343844, at *4 (S.D.N.Y. Aug. 15, 2011) (finding whether parties "did or did not conduct other business after the expiration . . . irrelevant because neither party executed a new written agreement to extend the terms," as required under the agreement's extension provision).

### B. Pre-Expiration Transactions

Plaintiff has, however, muddied the waters by including in this action five purchase orders from Rite Aid dated July 27, 2011 – prior to the Master Agreement's expiration. (Compl. Ex. A at 1, 2, 3, 6, 13). Plaintiff argues that these transactions are not covered by the Master Agreement because, by the date of delivery, Rite Aid knew that Orly Plastic had dissolved and that it was dealing with Plaintiff Orly Industry, which was not a signatory. (Torkeih Decl. ¶ 11; Pl. Opp. at 10). In response, Rite Aid asserts that Plaintiff, a non-signatory, is bound by the forum selection clause because it is closely related to Orly Plastic. (Def. Reply at 5).

7

A party's "non-signatory status does not, as a general matter, prevent it from being bound by the forum selection clause." LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 154 (E.D.N.Y. 2012) (citing Aguas Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009)). To determine when a non-signatory is bound, "courts look at whether the non-signatory is so closely related to the dispute that it becomes foreseeable that it will be bound." Leviton Mfg. Co., Inc. v. Reeve, 11-CV-6238, 2013 WL 504020, at *8 (E.D.N.Y. Feb. 7, 2013) (internal quotation marks omitted). While the Second Circuit has not reached the question of "when" a signatory may enforce a forum selection clause against a non-signatory, Magi XXI, Inc., 714 F.3d at 723 n.10, "the 'closely related' test is an analysis that has been embraced by several courts in this Circuit." Leviton, 2013 WL 504020, at *9 (collecting cases); see also In re Refco Inc., Secs. Litig., No. 08 Civ. 3086, 2009 WL 5548666, at *10 (S.D.N.Y. Nov. 16, 2009) ("After Aguas, there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard."). Although "the phrase 'closely related' is not particularly illuminating," the foreseeability requirement "implies that the non-signatory must have been otherwise involved in the transaction in some manner." Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors, 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012) (internal citation omitted).

In this case, the submissions show that after Orly Plastic dissolved, Plaintiff maintained the same owner, products, and vendor number, and without interruption filled the July 27, 2011, purchase orders initially addressed to Orly Plastic. Indeed, it seems incongruous for Plaintiff to seek recovery on purchase orders initiated by Orly Plastic under the contract without also accepting the obligations of that entity. Applying Phillips, the Court finds that the forum selection clause was reasonably communicated to Plaintiff through Torkeih, is mandatory by its

8

terms, covers the claims and parties in this action, and Plaintiff has not shown that the clause is invalid or that its enforcement would be unjust. See 494 F.3d at 383-84. Considering the allegations and submissions in a light most favorable to Plaintiff – and mindful that these issues are presented in a Rule 12(b) context – the Court is nonetheless persuaded that Plaintiff is bound by the forum selection clause in the Master Agreement with regard to the July 27, 2011, purchase orders. The complaint therefore is dismissed as to those transactions.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 18) is GRANTED without prejudice as to the five transactions dated July 27, 2011, pursuant to Federal Rule of Civil Procedure 12(b)(3). The motion is DENIED in all other respects.

**SO ORDERED.**

                                                    s/Sandra L. Townes
                                                    /SANDRA L. TOWNES
                                                    United States District Judge

Dated: August 23, 2013
       Brooklyn, New York